IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK08-83016-TJM |
| TRI-STATE FINANCIAL, LLC, ) | A10-8071-TJM |
| d/b/a NORTH COUNTRY ETHANOL, ) | |
| ) | CH. 7 |
| Debtor. ) | |
| THOMAS D. STALNAKER, Trustee, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | |
| ) | |
| JAMES G. JANDRAIN, individually and ) | |
| d/b/a JAMES JANDRAIN, CPA ) | |
| ) | |
| Defendant. ) | |

## ORDER

Trial was held in Omaha, Nebraska, on December 17, 18, and 19, 2013, regarding the plaintiff's first amended complaint (Fil. No. 43). David J. Skalka appeared on behalf of Thomas D. Stalnaker, Plaintiff, and C. Jan Headley appeared on behalf of James Jandrain, d/b/a James Jandrain CPA, Defendant.

In the Joint Preliminary Pretrial Statement (Fil. No. 47), the plaintiff summarizes his theory of the case as follows:

> This action is to obtain a judgment to recover (1) on claims the Debtor has against Defendant for amounts Defendant took from Debtor without authorization or agreement and/or for tasks Defendant performed for which he was expressly not to be compensated, for which breach of certain duties to the Debtor as Chairman of its Board of Managers, defalcation, and money had and received claim[s] lie and are asserted in this proceeding through 11 U.S.C. § 541, (2) the value of fraudulent transfers pursuant to 11 U.S.C. §§ 544 and 548, and (3) a number of preferential transfers to Defendant pursuant to § 547(b). Defendant is undisputedly an insider of Debtor TSF during the full year preceding TSF's filing of its Petition for Relief on November 21, 2008.

## **FACTS**

The following facts are found in the summary of uncontroverted facts on pages 8 and 9 of the preliminary pretrial statement (Fil. No. 47) and otherwise determined by the court following trial on the merits:

1. The plaintiff is the duly appointed, qualified and acting trustee in bankruptcy of the bankruptcy estate of Tri-State Financial, LLC, d/b/a North Country Ethanol ("TSF" or "Debtor"). He was appointed trustee in January 2009.

2. The defendant is an individual and at all times material hereto practiced as a certified public accountant under the name James G. Jandrain CPA. At all times material herein, James

Jandrain was a member of Tri-State, was a manager and managing agent of Tri-State and was an "insider" as defined in 11 U.S.C. § 101(31).

3. Jandrain was one of the limited liability company managers for TSF from at least November 21, 2006, to November 21, 2008.

4. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334 and §157, and Bankruptcy Rule 7001. The Code provides that this is a core proceeding.

5. Venue is proper in this court pursuant to 28 U.S.C. § 1409(a).

6. On November 17, 2008, Centris Federal Credit Union filed a foreclosure action against Tri-State.

7. On November 21, 2008, Tri-State filed a voluntary petition in bankruptcy under Chapter 11 of the Bankruptcy Code.

8. As of December 31, 2006, Debtor's free cash on hand was $987,735.00.

9. As of December 31, 2006, according to Debtor's financial records, the book value of Debtor's assets was $39,590,053, the book value of its liabilities was $24,911,290, and Debtor had net income for the year 2006 of $11,639,122.

10. Debtor made a $2 million distribution to its members on January 19, 2007, and Jandrain received a portion of that distribution.

11. Of the $2 million dividend distribution to its members on January 19, 2007, Jandrain received $180,000. The dividend was paid to all unit holders pro rata as a dividend to offset unit holders' tax consequences resulting from Debtor's 2006 profit of $11,639,122. At the time of the dividend payment, Debtor had assets of $39,590,053 and liabilities of $24,911,290.

12. In addition to the dividend listed in paragraph 11, Jandrain received transfers, dated December 11, 2006, through November 17, 2008, in the amount of $769,154.91. He transferred to Debtor or on behalf of Debtor and paid as advances for new value or earmarking $597,000 from October 2, 2007, to November 17, 2008.

13. Jandrain received those amounts for managing the business and accounting for the company, for interest paid in the ordinary course of Debtor's business and for reimbursement of monies advanced by him to or for Debtor's benefit.

14. Debtor's members operated Debtor under the authority of an operating agreement entered into by the members. Debtor itself was not a signatory to the operating agreement. The board of managers and, occasionally, the full membership, was made aware of the funds being paid to Jandrain through their receipt of financial statements which summarized invoices from Jandrain to Debtor. No member of Debtor has objected to the payments made to Jandrain during the two-year period prior to bankruptcy or earlier.

15. Debtor was solvent at all times during the two years prior to the bankruptcy filing, on a balance sheet basis. No evidence was presented that liabilities exceeded assets on a fair market basis at any time during those two years. For preferential transfer issues under the Bankruptcy Code, because Jandrain is an insider, Debtor is presumed insolvent for one year prior to the

bankruptcy filing. Plaintiff has failed to rebut the evidence of solvency shown in the audit and Debtor's financial records.

16. During the bankruptcy, Debtor was generally paying its bills when due.

17. From October 2, 2007, to November 17, 2008, Jandrain transferred $597,000 to Debtor.

18. Jandrain and other members personally borrowed $4,000,000 from Union Bank, providing TSF with a line of credit.

19. On February 8, 2008, Debtor transferred $100,000 to Jandrain, which is included in the total of $769,154.91 referred to above. That amount was used by Jandrain to personally obtain a letter of credit to support an appeal bond for Debtor in a South Dakota state court action. The appeal was resolved favorably to Debtor, thereby saving Debtor $2.8 million.

20. Debtor's operating agreement provided that members of Debtor's board of managers do not owe any fiduciary duty to Debtor or to members of Debtor. Members and managers of Debtor knew Jandrain was providing services to Debtor, knew Jandrain was being compensated for such services, and authorized such compensation to Jandrain.

21. The transfers to Jandrain were made in the ordinary course of business.

22. Jandrain's charges for services were reasonable.

23. Centris Federal Credit Union, during all of the time subject to this adversary proceeding, had a blanket security interest in all of Debtor's assets, including accounts and funds in Debtor's operating account.

24. All of the payments made to Defendant during the two-year period prior to the filing of the bankruptcy were made from the operating account which was subject to the security interest of Centris Federal Credit Union.

25. The loan officer and others at Centris Federal Credit Union were aware of the use of the funds in the operating account and were aware that transfers were being made to Jandrain for services rendered.

26. Jandrain did not breach any duties to Debtor and acted on behalf of Debtor in good faith.

27. Debtor received no preferential transfers.

28. None of the money received by Jandrain from Debtor was as a result of a fraudulent transfer.

## CONCLUSIONS OF LAW AND DISCUSSION

The amended complaint asserts that the operating agreement (Fil. No. 121) entered into by the members of TSF prohibited payment of compensation to managers for services rendered to TSF unless such compensation was approved by the managers. Section 6.2 of the operating agreement actually provides that a member's compensation for services shall be determined by the members. Section 6.4 provides that a manager shall not take any action for, in the name or on behalf of the company that requires the consent of a majority of the members, a majority in interest

of the members or some other consent under the terms of the agreement unless the action has been approved or authorized by such consent. Further, the operating agreement provides that managers shall have no fiduciary duty or duty of loyalty or duty of care to the company or to any member except a duty to act in good faith and a general obligation of fair dealing with respect to the company and its property.

The members were made aware by management that Jandrain was to act as chief executive officer and chief financial officer. The members were made aware through the receipt of financial documents of the company that Jandrain was being compensated for his personal services and for the services of his employees regarding the accounting process.

Because the operating agreement is an agreement among the members, and not an agreement between TSF and the members, there is a serious legal question as to whether the trustee, who acts in the shoes of Debtor, has any standing to bring any kind of action against Jandrain pursuant to the terms of the operating agreement. However, even if the trustee does have standing to bring such an action pursuant to the terms of the agreement, those terms, including determination of compensation, ratification of actions and operating in good faith all support Jandrain's position that the funds were properly received by him.

The trustee attempts to avoid the dividend which was paid in January of 2007. Such payment cannot be a preference under 11 U.S.C. § 547 because it was paid more than one year prior to the filing of the bankruptcy petition and it was made while Debtor was clearly solvent. All of the records submitted at trial, including the audit and the financial records, show balance sheet solvency at the time of the dividend payment.

The dividend cannot be avoided under § 548 as a fraudulent transfer because there is no evidence the transfer was made with actual intent to hinder, delay or defraud any entity and, in addition, Debtor was solvent at the time of the payment. At the time of the payment Debtor was not left with unreasonably small capital. Management and the members certainly did not intend to incur or believe that Debtor would incur debts that would be beyond Debtor's ability to pay as such debts mature.

The trustee also asserts the transfer was fraudulent under § 36-706 of the Nebraska Uniform Fraudulent Transfer Act.

> 36-706. Transfers fraudulent as to present creditors
> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
> (b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider knew or reasonably should have known that the debtor was insolvent.

In an action seeking to set aside a fraudulent transfer under state law, the burden of proof is on a creditor (trustee in a bankruptcy case) to prove, by clear and convincing evidence, that fraud existed in a questioned transaction. Eli's, Inc. v. Lemen, 591 N.W.2d 543, 555 (Neb. 1999) (citing Dillon Tire, Inc. v. Fifer, 589 N.W.2d 137 (Neb. 1999)). Clear and convincing evidence is "that

amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved." Id. at 555-56 (quoting Dillon Tire, 589 N.W.2d at 142).

Without insolvency, the transfer is not fraudulent.

Concerning the balance of the funds received by Jandrain, for preference purposes, there is no evidence of insolvency on a balance sheet basis at the time any or all of the payments were made. Without balance sheet insolvency at the time of the transfers, the transfers cannot be avoided as a preference. In addition, since all of Debtor's assets were covered by the security interest held by Centris Federal Savings and Loan, none of the transfers depleted the estate because the funds transferred were fully secured and would not have been available to general creditors had the payments not been made. Cage v. Wyo-Ben, Inc. (In re Ramba, Inc.), 437 F.3d 457, 460-461 (5th Cir. 2006).

Tri-State's solvency at the time of the transfers precludes a finding of fraud under the Nebraska Uniform Fraudulent Transfer Act. The trustee also proposes to avoid the transfers under 11 U.S.C. § 548(a)(1)(B), which deals with constructively fraudulent transfers. It does not require a showing of intent. Rather, the subsections under which the trustee is proceeding require him to prove Debtor's receipt of less than a "reasonably equivalent value" in the exchange and Debtor engaged in business for which it was left with unreasonably small capital. Those are fact questions, with the trustee bearing the burden of proving the elements of § 548 and the transferee carrying the burden of proving that the transfer was for reasonably equivalent value and Debtor remained solvent or had sufficient capital after the transfer. See Dietz v. St. Edward's Catholic Church (In re Bargfrede), 117 F.3d 1078, 1080-81 (8th Cir. 1997). The transfers are likewise not fraudulent under this section because of the issue of solvency and because Jandrain established that reasonably equivalent value was received for the transfer and that Debtor's capital remained at a level with which it could operate its business.

In conclusion, none of the transfers to Jandrain in the two years prior to the bankruptcy filing are avoidable as preferential transfers under the Bankruptcy Code, fraudulent transfers under the Bankruptcy Code, or fraudulent transfers under Nebraska law. In addition, the payments were authorized and approved and/or ratified by the board of managers and/or the members and the trustee does not have a legitimate claim to those payments.

IT IS ORDERED: The transfers at issue were not preferential or fraudulent. Separate judgment will be entered in favor of the defendant. The transfers were not in violation of the operating agreement. A separate judgement will be entered in favor of Defendant.

DATED: January 31, 2014

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
    *David J. Skalka    C. Jan Headley
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.